**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

_____

| | |
|---|---|
| **AUGUSTINE F. FORKWAR** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )      **Civil Action No. WGC-09-1543** |
| | ) |
| **EMPIRE FIRE & MARINE INS. CO.** | ) |
| | ) |
| **Defendant.** | ) |

_____)

## MEMORANDUM OPINION

Plaintiff Augustine F. Forkwar ("Plaintiff" or "Mr. Forkwar") brought this action against Defendant Empire Fire and Marine Insurance Company ("Defendant" or "Empire") seeking a declaratory judgment, namely, that Empire, the insurer, owes $180,756.76 to Mr. Forkwar, the amount awarded by a jury in the Circuit Court for Prince George's County, Maryland in favor of Mr. Forkwar and against Hameed Mahdi, an insured of Empire. The parties consented to proceed before a United States Magistrate Judge for all further proceedings in the case and the entry of a final judgment. *See* Document Nos. 11-12. Pending before the Court and ready for resolution are Plaintiff's Motion for Summary Judgment (Document No. 15) and Defendant's Cross-Motion for Summary Judgment (Document No. 18). Plaintiff filed an Opposition to Defendant's Cross-Motion (Document No. 19) and Defendant filed a Reply in further support of its Cross-Motion (Document No. 20). A motions hearing was held September 15, 2010.

## BACKGROUND

On November 26, 2004 Mr. Forkwar was operating his vehicle, a van, traveling north on Maryland Route 95 ("the Capital Beltway") in Prince George's County,

Maryland. Hameed Mahdi ("Mr. Mahdi") was operating his vehicle, a 1987 Kenwood Candlewood tractor (without the trailer) also traveling north on the Capital Beltway toward Jessup, Maryland. Near Exit 22 the two vehicles collided. According to Mr. Mahdi, the van stopped suddenly in front of his vehicle. According to Mr. Forkwar the collision occurred when Mr. Mahdi was switching lanes and sideswiped Mr. Forkwar's vehicle. At the time of the accident Mr. Mahdi's tractor bore the placard of "J & J Logistics, Inc." of Fort Washington, Maryland.

Within a few weeks after the accident Empire sent a *Trucking/Non-Trucking Questionnaire* to Mr. Mahdi. The questionnaire consisted of twenty-three (23) questions, with question six having six (6) subparts. Mr. Mahdi identified J&J Logistics, Inc. as his employer the day of the accident. Mr. Mahdi acknowledged that J&J Logistics, Inc.'s name and a Department of Transportation number appeared on the tractor at the time of the accident. Mr. Mahdi denied that he was "under dispatch" at the time of the accident. Mr. Mahdi however identified Mr. Tracy[1] of J&J Logistics, Inc. as the individual who dispatched Mr. Mahdi. In response to the question "Did the accident occur prior to picking up the load, en route to the dispatch destination, or after delivery on the return trip?" Mr. Mahdi answered "route to dispatch." Mr. Mahdi's responses to the questionnaire were notarized on December 16, 2004. Def.'s Mem. Law Supp. Cross-Mot. Summ. J. ("Def.'s Mem."), Ex. E.

Meanwhile Mr. Forkwar had retained counsel, Michael Blumenthal, to represent him. Either in late 2004 or early 2005 Mr. Blumenthal sent a representation letter on behalf of Mr. Forkwar and Isiah Bongam to Empire regarding the November 26, 2004

---

[1] Mr. Mahdi spelled the name as "Mr. Tacie" on the notarized questionnaire.

accident involving Empire's insured, Hameed Mahdi. In a January 18, 2005 letter, C. J.

Mather, Claims Specialist for Empire, responded in pertinent part,

> I would like to inform you that Empire Fire and Marine Insurance Company is the non-trucking insurance carrier for Mr. Mahdi. Because Mr. Mahdi was under dispatch to J & J Logistics at the time of the accident, we will be unable to provide benefits under this policy.
>
> I have done some research on the claim and found that J & J Logistics is insured with Progressive Northern Insurance Company under Policy No. CA1765349-2. Their telephone number is 440-516-5006 and their fax number is 440-516-9378. This claim has been reported to Progressive Insurance. I ask at this time that you please redirect your representation to that carrier for benefit consideration.

Mem. Law Supp. Pl.'s Mot. Summ. J. ("Pl.'s Mem."), Ex. 5 (Letter from Mather to

Blumenthal, Esq. of 1/18/05 at 1).

A few months later, on April 1, 2005, Empire sent Terry Reber of Custom Claim

Service, Inc. to obtain a recorded statement[2] from Mr. Mahdi. Mr. Reber asked Mr.

Mahdi a series of questions to learn more details about what Mr. Mahdi was doing the

day the accident occurred.

> TR:   Back in November when this accident happened you were working for J&J Logistics about three days a week?
>
> HM:   That's correct.
>
> TR:   And were you also working for other people?
>
> HM:   No I wasn't.
>
> TR:   So you were only working for J&J?
>
> HM:   Correct.

---

[2] Excerpts of the recorded statement are quoted *solely* in describing the chronological factual background.

TR:   Now you said you were on your way to…well after you got lunch you were gonna be on your way to Giant Foods in Jessup.

HM:   I take my lunch break.  I took my lunch and I was gonna head on in, like I said I won't do dispatch at midnight. I really wasn't…going to work, I was gonna eat some meat, take a break, eat my lunch and everything and then head onto work.

TR:   Were you going to Giant Foods for J&J Logistics?

HM:   That's correct.

TR:   And were you going to pick up a load there?

*                          *                          *

TR:   Had you been told yet where you were going to be going with the load?

HM:  No, they don't tell you that.

TR:   Were you certain that you were going to have a load that day?

HM:   You're sitting there, once you punch in, once you clock in, then you know what you were doing.

TR:   But did you know before you got there that you would have a load that day when you got there?

HM:   Yes.  I was aware that when I go there I would have a load.

TR:   You knew that you would have a load?

HM:   Right, absolutely, once I got there.

*                          *                          *

TR:   How far in advance did you know what days you'd be hauling?

HM:   You'd have to call in.  You have to call in to find out the day that was available for it to work.

TR:   And when would you call in?

HM:   We call in about 12 hours ahead of time, you'd call a day ahead of time.  (*unintelligible*) work for me to do.  You call in to verify that.

TR:   So in other words, you'd call in every day after 4:00 to see if you had a load for the next day?

HM:   That's correct.

TR:   Is that right?

HM:  Uh huh.  That's correct.  We'd call in.

TR:   Now this accident happened on November the 26th, did you call in on November the 25th to find out if you'd have a load on the 26th?

HM:   That's correct.

TR:   You did?

HM:   Uh huh.  Yeah, I called in (*unintelligible*).

TR:   Okay.  And when you called in on the 25th, who did you call?

HM:   I called Tucker, Tracy.

TR:   Tracy?

HM:   Uh huh.

TR:   Is that a male or female?

HM:   Male.

TR:   And where is he?

HM:   He's a dispatcher in, uh, J&J.

*                          *                          *

TR:   Who owns the trailers that you haul for J&J?

> HM:   Giant Foods.
>
> TR:   Is J&J an[] RCC authorized motor carrier[]?
>
> HM:   He's authorized.
>
> TR:   Are you?
>
> HM:   No, I'm a truck for hire.  I'm a truck for hire.  I don't have my own stores, no I don't.
>
> TR:   Whose RCC numbers were on your truck at the time of the accident?
>
> HM:   J&J.
>
> TR:   And whose company placard, who's [sic] company name was on your truck at the time?
>
> HM:   J&J own the truck.

Def.'s Mem., Ex. D (Recorded Statement at 6, 7, 8, 14).

Approximately a year later, on April 13, 2006, Mr. Blumenthal, on behalf of Mr. Forkwar and Mr. Bongam, sent another letter to Empire.  On that same day, Brian Vice, AIC, Claims Specialist responded, writing in the first paragraph,

> I have received and reviewed your letter of April 13, 2006.  Our policy is a Non-Trucking policy.  Mr. Mahdi was under dispatch to J & J Logistics at the time of the loss.  Since Mr. Mahdi was under dispatch, our policy does not apply.  We have disclaimed coverage to Mr. Mahdi and will be unable to make any payments for this claim.

Pl.'s Mem., Ex. 6 (Letter from Vice to Blumenthal, Esq. of 4/13/06).

On October 26, 2006 Mr. Forkwar filed a lawsuit in the Circuit Court for Prince George's County, Maryland against Mr. Mahdi, J&J Logistics, Inc. and New Hampshire

Insurance Company, an insurer who issued an insurance policy to Mr. Forkwar.[3]  In his complaint Mr. Forkwar alleged Mr. Mahdi was negligent in operating his vehicle, J&J Logistics, Inc. was liable as a *respondeat superior* because J&J Logistics, Inc. employed Mr. Mahdi and New Hampshire Insurance Company breached its contract or insurance policy with Mr. Forkwar concerning damages incurred due to the negligence of an uninsured or under-insured motorist.  *See id.*, Ex. 13.

On October 26, 2006 Empire sent the following letter to Mr. Mahdi.

> We have received notice of a lawsuit entitled <u>Augustine Forkwar v. Hameed Wahdi</u>[4], filed in the Circuit Court in Prince George's County, MD.  This suit has been filed in an attempt to collect for bodily injury from the incident that occurred on November 11, 2006.[5]  This is the incident in which Mr. Forkwar stopped suddenly in front of your vehicle causing you to hit the rear of his vehicle.
>
> You were issued a policy of liability insurance, Policy No. NT386189, by Empire Fire and Marine Insurance Company of Omaha, Nebraska, for the period of 10/5/2004 to 10/5/2005, and [Mr.  Forkwar] is now claiming benefits under said policy.
>
> Based upon the information you have given us and our supplemental investigation, we hereby deny and disclaim coverage and contend you are not entitled to any benefits under said policy because at the time of the accident, you were under dispatch with J & J Logistics, Inc. and on your way to pick up a delivery in Jessup, MD at Giant's Food. Your Non-Trucking Liability Policy specifically excludes coverage for your vehicle when the vehicle is being used in the business of another.
>
> Your coverage form, EM0031 (06-01), Commercial Auto Policy of Insurance for Non-Trucking Use, reads in part:

---

[3]  According to Plaintiff's First Amended Complaint, the insurance policy issued by New Hampshire Insurance Company included a provision to pay for bodily injuries and losses occurring due to the negligence of an uninsured or under-insured motorist.  In Counts III and IV against New Hampshire Insurance Company, alleging breach of contract, Mr. Forkwar asserted Mr. Mahdi was uninsured or under-insured at the time of the accident.  *See* Mem. Law Supp. Pl.'s Mot. Summ. J. ("Pl.'s Mem."), Ex. 13.
[4]  Should be **M**ahdi.
[5]  Should be November **26**, **2004**.

SECTION II – LIABILITY COVERAGE FOR NON-TRUCKING USE

A. COVERAGE

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance, or use of a covered "auto."

B. EXCLUSIONS

This insurance does not apply to any of the following:

14. BUSINESS USE

"Bodily injury" or "property damage" while a covered "auto" is used to carry people or property in any business or while a covered "auto" is used in the business of anyone to whom the "auto" is leased or rented.

A claim has already been set up with Progressive, J & J Logistics' insurance carrier. The law suit has also been forwarded to them for handling.

Empire Fire and Marine Insurance Company, by naming the specific grounds for this Disclaimer of Coverage, does not waive any of its rights or any of the other provisions and conditions of said policy of insurance and specifically reserves all of its rights and remedies under said policy, and under the statutes and common law.

Presently, we can take no further action. If additional information or evidence is available to you that would alter our coverage decision, or a lawsuit is filed against you, **NOTIFY US IMMEDIATELY**.

If you have any questions or concerns, please contact the file handler, Brian Vice, at xxx-xxx-xxxx x xxxx.

*Id.*, Ex. 4 (Letter from Balus to Mahdi of 10/26/06 at 1-2); Def.'s Mem., Ex. G (Letter

from Balus to Mahdi of 10/26/06 at 1-2).

A year later, on October 30, 2007, Christopher R. Wampler, Esquire, wrote the following letter to Jason Peschaw of Progressive Insurance regarding Progressive Insurance's insured, J&J Logistics, Inc., stating in pertinent part,

> Enclosed, please find a copy of J&J Logistics Inc.'s Answer to the Complaint, which was filed on behalf of my client and your insured. As you know, my client previously filed this claim and sent copies of suit papers on October 16th, 2007. When we last spoke, you indicated you had to discuss this claim with others in your office to determine Progressive's position on assigning a defense.
>
> At this time, my client is further demanding that you provide a defense as required under the terms of your policy and/or bond. I have exhausted all other available avenues of attempting to have the driver's insurance company, Empire Fire and Marine/Zurich, indemnify my client with respect to this litigation. Please complete your investigation, as promptly as possible, and provide me the name and contact information of counsel that has been assigned to represent the interests of my client.

Pl.'s Mem., Ex. 7 (Letter from Wampler, Esq. to Peschaw of 10/30/07).

On December 5, 2007 Mary Malloy Dimaio, counsel for New Hampshire Insurance Company, addressed a letter to Mark Balus, Vice President, Claims, Empire Fire and Marine Insurance Company.

> Please be advised that I have been retained to represent New Hampshire Insurance Company in defense of [*Augustine Forkwar v. Hameed Mahdi, et al*]. I am in receipt of your October 26, 2006 letter denying coverage to Mr. Mahdi in reference to the captioned matter. I enclose a copy of the opinion of the Court of Appeals of Maryland in the case of *Salamon v. Progressive Classic Ins. Co.*, which states that the exclusion in your policy is invalid up to our state mandatory minimum insurance coverage of $20,000 per person. According to our Court of Appeals, you may enforce your policy above the $20,000 limit, but you owe at least $20,000 coverage to Mr. Mahdi for his alleged negligence in this accident.

> Thus, I expect that you will be hiring counsel to defend Mr. Mahdi in this action. I would be happy to answer any questions you have.

*Id.*, Ex. 8 (Letter from Dimaio, Esq. to Balus of 12/5/07 at 1-2).

Nearly a year later, on October 13, 2008, Mr. Blumenthal addressed a letter to Mr. Balus of Empire, stating in pertinent part,

> Kindly find the enclosed Complaint and Affidavit of Service to Mr. Hameed Mahdi for the above reference Claim. As noted in the Affidavit of Service, Mr. Mahdi was served on August 1, 2008. Currently, the record indicates no attorney has entered their appearance on behalf of Zurich's interests in this matter. The trial is currently scheduled for December 3, 2008. After an attorney has been assigned to this case, please have them contact me at my office to discuss the case.

*Id.*, Ex. 9 (Letter from Blumenthal, Esq. to Balus of 10/13/08).

A month later, on November 19, 2008, Michael Blumenthal addressed a letter to Matthew Peterson, Claims Adjuster, Empire Fire and Marine Insurance Company, stating in pertinent part,

> I am hereby making a demand for the policy limits of your client's policy. . . .The opportunity to resolve the claim without exposing your insured to personal liability for an excess verdict will be deemed rejected if not accepted by December 2, 2008. Kindly convey this information to your insured and advise me as appropriate of your intentions.

*Id.*, Ex. 10 (Letter from Blumenthal, Esq. to Peterson of 11/19/08).

The trial of *Augustine F. Forkwar v. J & J Logistics, Inc., et al.*, Civil Action Law 06-23064, began December 3, 2008 and concluded December 4, 2008. During Plaintiff's opening statement, Mr. Blumenthal explained in pertinent part,

> We are here today with J & J Logistics because at the end of the day all of the avenues need to be litigated so that we can hopefully establish at the end of this case why

Mr. Mahdi was operating that vehicle. And if he was operating it at that time for his own purposes and not at the behest of or within an agency relationship of his relationship with J & J Logistics, then Mr. Mahdi is on the hook and one day somehow we hope to have him answer for this.

There are all kinds of reasons why when you proceed in that fashion you need to have all the people in here so that the jury can make the decision. If I'm going to take a piece of paper, a verdict, and try to pursue Mr. Mahdi, then I need you guys to be what gave me that piece of paper. And that's why J & J Logistics is in this courtroom. We need and they need, ironically, the same thing here.

We need a jury making a finding that when Mr. Mahdi was operating the vehicle at the point he hit Mr. Forkwar he was not under dispatch from J & J Logistics, he wasn't doing their bidding, he was done with that bidding, he was doing his own. I absolutely expect that is going to be what you hear.

\*                        \*                        \*

I am not seeking a money judgment against J & J Logistics. I'm not interested in presenting any medical testimony against J & J Logistics. I am not interested in showing you guys the videotape of the expert witness that we will talk about, what Mr. Forkwar has gone through medically as to J & J Logistics. None of that is my concern.

I do need you to hear it and I do need you to consider it as to Mr. Mahdi. We are still trying to work out how logistically that plays out, but at the end of the day what you'll end up hearing, one way or the other, as the evidence unfolds is that Mr. Mahdi was in fact negligent in the operation of his vehicle and Mr. Forkwar was injured, very much injured.

\*                        \*                        \*

And when we come back, I think, I expect the judge will take care of J & J, and I expect they will be walking out of the courtroom. There will be a point during the trial

where we will hear testimony about Mr. Forkwar's medical difficulties he has had.

At the time when we come back we are going to ask that you return a judgment in favor of Mr. Forkwar and against Hameed Mahdi. There will be a breakdown as to what you find as to medical expenses, for pain and suffering, medical expenses in the future. We will look at that. Just knowing it's coming.

\*                        \*                        \*

As we attempt to show that ironically J & J didn't have anything to do with Mr. Mahdi, at the same time as we attempt to show that Mr. Mahdi did act in a negligent fashion as he was operating the vehicle, and as we attempt to show that Mr. Forkwar ought to have a recovery against Mr. Mahdi for his actions, the extent to which we need to convince you of that is just better than 50 percent.

Def.'s Mem., Ex. C (1-52:23 – 1:53:19, 1-54:5 – 17, 1-56:18 – 1:57:3, 18 – 24).

J&J Logistic's counsel, Mr. Wampler, made the following opening statement on

his client's behalf, stating in pertinent part,

I'm Chris Wampler and I represent the defendant J & J Logistics. I do have good news for you. This is going to be the shortest opening statement I have ever given. I'm not going to tell you what happened in the accident. My client doesn't know what happened in the accident, and there's a very good reason. My client wasn't present at the accident.

Who was present and who apparently may have caused the accident, Mr. Mahdi, was an independent contractor that at one time, not at this time, but at one time worked for J & J Logistics. You are going to hear testimony from Marcus Johnson, who is the president of J & J Logistics, about Mr. Mahdi and about the relationship between Mr. Mahdi and J & J Logistics.

You are not going to hear any substantive evidence that at the time this accident occurred Mr. Mahdi was working for J & J.

What you consider here today is you consider evidence, that is all you consider, and that's what you are going to have in front of you. The evidence is going to be absolutely overwhelming that Mr. Mahdi, whatever he was doing that day, was not working for J & J Logistics.

*Id.*, Ex. C (1-58:8 – 1-59:4).

Marcus Johnson, the owner of J&J Logistics was called as a witness and questioned by Mr. Blumenthal, counsel for Mr. Forkwar.

Q:    Mr. Johnson, by whom are you employed, sir?

A:    J & J Logistics.

Q:    I guess, for no other reason, can you give me their address and tell me what they do?

A:    The address is 620 Cady, C-A-D-Y, Drive, Fort Washington, Maryland. It's a trucking company, logistics.

Q:    Was J & J Logistics in existence in November, 2004?

A:    Yes, it was.

Q:    Were you president of J & J Logistics in November 2004?

A:    Yes, I was.

Q:    Do you keep the records, is that your job, to make sure the records are kept in the ordinary course of business and are clear and true and all that stuff?

A:    Yes.

Q:    So you are the custodian of those records?

A:    Yes.

Q:    You do know Hameed Mahdi, is that correct?

A:    Yes, I do.

Q:      Can you tell the jury what relationship if any Hameed Mahdi had at any time with J & J Logistics, Incorporated?

A:      Well, Hameed Mahdi, he's an independent contractor. He had his own truck and he worked for J & J occasionally in the past.

\*                          \*                          \*

Q:      Was Mr. Mahdi an independent contractor for J & J Logistics in November 2004?

A:      No.

Q:      Did he have any ongoing business relationship with J & J Logistics in November 2004?

A:      Not as I can recollect.

Q:      You are aware that in November 2004 Mr. Mahdi got into a collision with a vehicle being operated by Augustine Forkwar, the plaintiff in this matter, correct?

A:      Yes.

Q:      While Mr. Mahdi was operating the vehicle involved in this collision, was Mr. Mahdi at the time of the collision under dispatch by J & J Logistics, Inc.?

A:      No.

Q:      Was Mr. Mahdi in any way acting within the scope of and in furtherance of the interest of J & J Logistics, Inc. at the time of that collision with Mr. Forkwar on November 26, 2004?

A:      No.

Q:      Mr. Mahdi has indicated to someone at J & J Logistics that at the time of the collision he was driving to a shop to get to or otherwise tend to some tires that he had to deal with, is that correct?

A:      It's been a long time. I would imagine it could have been.

\*                    \*                    \*

Q:     You did answer the interrogatories, correct?  I'm going to offer these to you to see if I could refresh your recollection.  Could you read to yourself the answer to Interrogatory No. 11.

\*                    \*                    \*

Q:     Sir, having reviewed that document, does it refresh your recollection as to whether or not there was a point in time that Mr. Mahdi indicated to someone at J & J Logistics that at the time of the collision he was doing something to attend to his tires on his vehicle?

A:     It could have been, you know.  I have two other people in my office besides me that he could have, you know.

Q:     And your answer was he told J & J Logistics he was driving to a shop to get tires or attend to tires at the time of the collision, correct?

A:     It could be correct, yes.

Q:     Who owned the truck that Mr. Mahdi was operating on November 2[6], 2004?

A:     He owned the truck.  He was an independent contractor.

Q:     And the tru[c]k had J & J Logistics written on it, is that right?

A:     No.  The truck might would have had a sticker or something on it.  We used stickers and stuff to put on the truck with our name and our MC number.

Q:     But that doesn't change the understanding between you and Mr. Mahdi with regard to his relationship with you, correct?

A:     Well, I don't understand what you're saying.

> Q:      I mean the fact that his truck said J & J Logistics, Inc. on it on a sticker doesn't change the contractual relationship with Mr. Mahdi that established that he was an independent contractor acting on his own behalf, he is not under a dispatch is not otherwise acting on your behalf, you being J & J Logistics?
>
> A:      That's true.
>
> MR. BLUMENTHAL:  I have no other questions, Your Honor.
>
> MR. WAMPLER:  I don't have any questions of this witness at this time.

*Id.*, Ex. C (1-59:18 – 1-60:18, 1-61:2 – 1-62:1, 6 – 9, 19 – 1-64:3).

After Mr. Johnson's testimony, J&J Logistics moved for summary judgment.  On behalf of Mr. Forkwar, Mr. Blumenthal responded.

> MR. BLUMENTHAL:  I can tell the Court that there would be nothing in addition from Mr. Forkwar with regard to that issue, and of course that – – the other evidence with regard to negligence and with regard to Mr. Mahdi, but with regard to the question whether Mr. Mahdi was acting on his own behalf for his own purposes or for purposes of J & J Logistics, that's the extent of our evidence.  And if Your Honor would let me close as to that part of the case, I would do so with the intention of offering additional evidence otherwise.

*Id.*, Ex. C (1-64:13 – 22).  Judge Mittelstaedt asked the bailiff to escort the jury out of the courtroom.  The discussion between Judge Mittelstaedt and counsel continued in open court.

> MR. BLUMENTHAL:  Your Honor, I could close. I have nothing further against J & J Logistics.  I don't think it's fair to keep Mr. Wampler and his client in here at this point, given the state of the evidence, particularly since Mr. Mahdi didn't show up and we hoped he would.  I can close at this time.  I would intend to reopen as to the negligence of Mr. Mahdi.

THE COURT: All right. I'm wondering why you didn't just dismiss J & J, because in your opening you pretty much indicated there was no liability that could be claimed against J & J. So why did we even do this?

MR. BLUMENTHAL: Had Mr. Mahdi shown up today, I'll tell you two reasons. First, had Mr. Mahdi shown up today it might have been an entirely different matter. That's one.

THE COURT: All right. But he didn't show up.

MR. BLUMENTHAL: He didn't, and I'm now dealing with it in the reality of today, which changed when Mr. Mahdi didn't show up, because he may have. So I could not go forward today for that reason.

Second, we talked about discovery. I got handed the independent contractor agreement this morning from Mr. Wampler. I didn't have that before today. I'm not raising these things, but that impacts how this thing occurred.

Third, most importantly, my understanding of joint tort feasor analysis is if I dismiss as against a potential joint tort feasor, when I proceed against Mahdi and hope down the road to involve Zurich in this thing, they can come back and say you dismissed out joint tort feasor.

MR. WAMPLER: I don't think it's a joint tort feasor issue. I think it's vicarious liability.

THE COURT: I agree with you. Either he's the agent or he's not the agent, and if he's not it is not a joint tort feasor situation.

MR. BLUMENTHAL: I want to be able to go back against Zurich and say there's been in open court, there's been a decision about what Mahdi was doing, you elected not to be a part of that, the decision went against you, now that it's been litigated you need to answer to what's unfolded. And I couldn't do that by agreement or otherwise, but I sure can close at this time, Your Honor, with the intention of reopening.

And at that point Mr. Wampler, I'm sure, has a motion that I at this point can't oppose.

THE COURT: What's your motion?

MR. WAMPLER: If he is closing at this time it would be a motion for judgment. There's no evidence at all that my client was the principal and Mr. Mahdi was his agent at the time of this accident.

\*                    \*                    \*

THE COURT: All right. Under Count 2, respondeat superior claim against J & J Logistics, Incorporated, the Court finds that the plaintiff has failed to establish a prima facie case of agency against J & J Logistics and that they failed to show that Mr. Mahdi was operating the vehicle on behalf of J & J Logistics or in the furtherance of J & J Logistics' business. So therefore judgment is granted in favor of J & J Logistics, Inc. as to Count 2.

*Id.*, Ex. C (1-67:16 – 1-69:15, 23 – 1-70:5).

With the dismissal of J&J Logistics, Judge Mittelstaedt inquired about Counts III and IV against New Hampshire Insurance Company. Mr. Blumenthal explained that he had filed a line of dismissal without prejudice as to those counts. Judge Mittelstaedt then noted that the remaining count is Count I against Mr. Mahdi.

When the jury returned to the courtroom, Judge Mittelstaedt explained that judgment had been entered in favor of J&J Logistics. Mr. Blumenthal then proceeded with the case against Mr. Mahdi.

On December 4, 2008 the jury returned a verdict in favor of Mr. Forkwar and against Mr. Mahdi. The jury awarded Mr. Forkwar the sum of $180,756.76. *See* Pl.'s Mem., Exs. 1 (2-30:12 – 2-32:25), 3.

Twenty days after the jury's verdict, Mr. Blumenthal sent the following letter to

Matthew Peterson, Claims Adjuster for Empire.

> As you are aware, your insured, Mr. Hameed Mahdi, was involved in a motor vehicle accident with our client, Mr. Augustine Forkwar, on November 26, 2004. On January 18, 2005, Empire Fire and Marine Insurance Company made the unilateral decision that Mr. Mahdi was "under dispatch" for J&J Logistics, Inc. at the time of the incident and elected to deny coverage in this matter. (See the January 18, 2005, correspondence from C.J. Mather attached hereto).

> A lawsuit was initiated in this matter on October 26, 2006, naming your insured and J&J Logistics, Inc. as defendants. Your company elected not [to] provide a defense for your insured, again, based on the unilateral decision that he was "under dispatch" for J&J Logistics, Inc. (See the October 26, 2006, correspondence from Mark Balus to Hameed Mahdi attached hereto).

> When service of process was perfected on Mr. Mahdi on August 1, 2008, a copy of the Affidavit of Service was forwarded to you and I requested at that time that an attorney be assigned and that I be contacted to discuss the upcoming trial. (See the October 13, 2008, correspondence to Mr. Mark Balus attached hereto (internal attachments omitted)). On October 27, 2008, a member of my staff, Mr. Gregory Emrick, spoke with you, at which time you indicated that the decision of January 18, 2005, stood and Empire Fire and Marine Insurance Company would not be participating in the litigation.

> On November 19, 200[8], I sent a demand for policy limits, which was to be accepted by December 2, 2008. (See the November 19, 2008, correspondence attached hereto). I did not receive a response by the required deadline.

> On December 3 and 4, 2008, this case was tried before the Honorable Crystal D. Mittelstaedt and a jury. During the course of trial, Mr. Marcus Johnson, President of J&J Logistics, Inc., testified that Mr. Mahdi was not under dispatch for J&J Logistics, Inc. at the time of the subject occurrence. The jury determined that Mr. Mahdi

was negligent in the operation of his vehicle, and awarded Mr. Forkwar $18[0],756.[76] in damages as to defendant, Mahdi. There was no such finding or award as to defendant, J&J Logistics, Inc. (See the Judgment attached hereto).

Under Maryland law, Empire Fire and Marine Insurance Company had a duty to defend Mr. Mahdi in this case. The Maryland Court of Appeals stated that "an insurer has a duty to defend when there exists a 'potentiality that the claim could be covered by the policy.' Under the potentiality rule, the insurer will be obligated to defend more cases than it will be required to indemnify because the mere possibility that the insurer will have to indemnify triggers the duty to defend." *Litz v. State Farm Fire & Cas. Co.*, 346 Md. 217, 224 (1997) (citations omitted).

In short, the question whether your company would be required to pay for Mr. Mahdi's negligent actions was [] contested in this case and "[i]f there is a possibility, even a remote one, that the plaintiffs' claims could be covered by the policy, there is a duty to defend." *Id.* at 231. Having elected to ignore these obligations, you may not now be heard to call into question the jury's findings.

Empire Fire and Marine Insurance Company's decision to refuse Mr. Mahdi a defense, its failure to settle this matter within policy limits, and a judgment against your insured requires that your company satisfy the judgment in its entirety, plus interests and costs. (*See State Farm Mut. Aut. Ins. Co. v. Schlossberg*, 82 Md. App. 45, 64 (1990)).

Accordingly, I ask that you forward a draft in the amount of $18[0],756.[76] plus interest at the legal rate (10%) calculated to the date the draft is received by my office.

I thank you for your anticipated attention to this matter. . . .

Pl.'s Mem., Ex. 11 (Letter from Blumenthal, Esq. to Peterson of 12/24/08 at 1-2).

## JURISDICTION AND VENUE

Subject matter jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332.  Mr. Forkwar resides in Hyattsville, Prince George's County, Maryland. *See* Compl. Declaratory J. (Document No. 2).  Empire is organized under the laws of Nebraska with its principal place of business in Illinois.  "Empire is a wholly owned subsidiary of Zurich American Insurance Company, a New York corporation.  Zurich American Insurance Company is a wholly owned subsidiary of Zurich Holding Company of America, Inc., a Delaware corporation.  Zurich Holding Company of America, Inc. is a 99.8711% owned subsidiary of Zurich Insurance Company, a Swiss corporation." Document No. 3 at 1.

 Pursuant to 28 U.S.C. § 1391 venue is proper in this district because a substantial part of the events or omissions giving rise to the claim occurred in this district.  The Court notes Empire removed this case from state court to federal court.  *See* Document No. 1.

## STANDARD OF REVIEW

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d

1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The moving party bears the burden of showing that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c); *Pulliam Inv. Co.*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323.

On those issues where the nonmoving party will have the burden of proof, it is that party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson*, 477 U.S. at 256. However, "'[a] mere scintilla of evidence is not enough to create a fact issue.'" *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v. North Carolina Theaters, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966), *aff'd*, 388 F.2d 987 (4th Cir. 1967), *cert. denied*, 390 U.S. 959 (1968)). There must be "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

When faced with cross-motions for summary judgment, the Court must consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks omitted). The Court applies the same standard of review. *Monumental Paving & Excavating, Inc. v. Penn. Mfrs.' Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir. 1999) (citing *ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 45 n.3 (4th Cir. 1983) ("The court is not permitted to resolve genuine issues of material fact on a motion for summary judgment – – even where . . . both parties have filed cross motions for summary judgment.") (emphasis omitted), *cert. denied*, 469 U.S. 1215 (1985)).

## ANALYSIS

*A.      Whether the doctrine of collateral estoppel is applicable*

Empire did not defend Mr. Mahdi at the state court trial because its investigation revealed Mr. Mahdi was "under dispatch" for J&J Logistics.[6] Under the "Business Use exclusion" provision, Empire's policy does not cover accidents resulting in bodily injury or property damage when the insured is operating the vehicle in furtherance of another's business, in this instance, J&J Logistics. Mr. Forkwar contends Empire is collaterally prohibited from re-litigating this issue.

---

[6] During the motions hearing counsel for Empire cited the case of *Brohawn v. Transamerica Insurance Co.*, 276 Md. 396, 347 A.2d 842 (1975) in support of Empire's decision not to defend Mr. Mahdi. "Even if a tort plaintiff does not allege facts which clearly bring the claim within or without the policy coverage, the insurer still must defend if there is a potentiality that the claim could be covered by the policy." *Brohawn*, 276 Md. at 408, 347 A.2d at 850. Based on its internal investigation, the nationwide use of the "Business Use exclusion" provision and multiple state and federal courts construing the "Business Use exclusion" provision as unambiguous, Empire determined there was not a potentiality that the claim would be covered by Mr. Mahdi's non-trucking policy. "[T]he rule has been justified on the theory that the insurer's duty to defend extends only to claims covered by the policy and that "[i]f the declaration does not allege a liability within the coverage of the policy the insurance company is not required to defend." *Eastern Shore Fin. Res. Ltd. v. Donegal Mut. Ins. Co.*, 84 Md. App. 609, 622, 581 A.2d 452, 459 (1990) (quoting *Thomas v. American Universal Ins. Co.*, 80 R.I. 129, 93 A.2d 309, 312 (1952); *see also Boyle v. National Cas. Co.*, 84 A.2d 614 (D.C.1951)).

> Defendant, Empire would have this Court decide the
> question whether Mahdi was engaged in a business or non-
> business use of his vehicle at the time of the subject
> occurrence. Collateral estoppel acts to bar Defendant from
> re-litigating this issue as it is an issue that Defendant,
> Empire could have, and indeed, was contractually obligated
> to have litigated when it was taken up by a judge and jury
> in the prior adjudication.

Pl.'s Mem. at 8.

Empire rejects Mr. Forkwar's assertion that collateral estoppel bars any challenge

to the judgment entered in favor of J&J Logistics in the underlying state court action.

> Empire was neither a party nor in privity with as party to
> the Underlying Action, and did not have a fair opportunity
> to be heard in the Underlying Action. In addition, based
> upon Plaintiff's litigation tactics in the Underlying Action
> with regard to J&J Logistics' relationship with Mahdi, and
> the fact that J&J Logistics' motion for judgment was
> unopposed, Plaintiff can hardly argue that there was a final
> judgment as to J&J Logistics' role "on the merits" in the
> Underlying Action. Furthermore, collateral estoppel cannot
> prevent Empire from re-litigating the question of whether
> Mahdi was "in the business of" J&J Logistics because it
> had no opportunity to appeal the judgment in the
> Underlying Action. Finally, the relevant issue decided in
> the Underlying Action, *i.e.*, whether J&J Logistics was
> liable for the Accident based upon a common law theory of
> *respondeat superior*, is not identical to the issue that is
> dispositive of Empire's lack of a coverage obligation, *i.e.*,
> that Mahdi was operating the tractor "in the business" of
> J&J Logistics.

Def.'s Mem. at 10.

Since this Court's jurisdiction is based on diversity of citizenship, the principles

outlined in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938) require the application

of Maryland law to substantive law questions. To determine the preclusive effect, if any,

of the state court judgment in favor of J&J Logistics, this Court must apply Maryland

law. A four part test must be satisfied in order for collateral estoppel to be applicable.

> 1.  Was the issue decided in the prior adjudication identical
> with the one presented in the action in question?
>
> 2.  Was there a final judgment on the merits?
>
> 3.  Was the party against whom the plea is asserted a party
> or in privity with a party to the prior adjudication?
>
> 4.  Was the party against whom the plea is asserted given a
> fair opportunity to be heard on the issue?

*Colandrea v. Wilde Lake Cmty. Ass'n*, 361 Md. 371, 391, 761 A.2d 899, 909 (2000)

(citing *Washington Suburban Sanitary Comm'n v. TKU Assocs.*, 281 Md. 1, 18-19, 376

A.2d 505, 514 (1977)).  The Court shall now consider whether each element is satisfied

in light of the facts of this case.

In the prior adjudication Mr. Forkwar's First Amended Complaint consisted of

four counts:  (a) negligence against Mr. Mahdi, (b) *respondeat superior* against J&J

Logistics, Inc., (c) breach of contract against New Hampshire Insurance Company, Mr.

Forkwar's insurer and (d) another breach of contract against New Hampshire Insurance

Company.  At trial J&J Logistics moved for judgment on Count II which the state court

granted.  As to Counts III and IV Mr. Forkwar filed a line of dismissal without prejudice.

The jury returned a verdict in favor of Mr. Forkwar and against Mr. Mahdi concerning

Count I, negligence.

Mr. Forkwar contends the issue in the prior state court adjudication and the issue

in the present litigation before this Court are identical.

> Inasmuch as Defendant, Empire is contractually obligated
> to indemnify Mahdi for negligent acts while operating his
> vehicle for a non-business use, the resolution of the
> question whether Mahdi was in fact engaged in a non-
> business use of his vehicle is dispositive of the instant
> litigation.

Pl.'s Mem. at 9.

> At the close of Plaintiff's evidence as to the issue of
> agency, Defendant, J & J Logistics, Inc. moved for
> judgment.  The Court granted its motion.  In short, the issue
> of whether Mahdi was operating his vehicle for a business
> or non-business use was decided in the prior adjudication.

*Id.* at 11 – 12 (citation omitted) (footnote omitted).

Empire rejects Mr. Forkwar's assertion that the resolution of the *respondeat*

*superior* claim in the prior adjudication is dispositive of the coverage issue in the present

litigation.

> [A] party seeking to prevail on a common law claim for
> *respondeat superior* must demonstrate a much greater level
> of control by an employer than what Empire must prove
> here to demonstrate that Mahdi was operating his tractor
> "in the business of" J&J Logistics.  Because the standards
> are different, the judgment obtained by J&J Logistics in the
> Underlying Action cannot be binding on Empire here.

Def.'s Mem. at 13.

> [With regard to the "Business Use exclusion" provision in
> the policy issued by Empire], as long as Mahdi was
> operating his vehicle in furtherance of the commercial
> interests of J&J Logistics, the exclusion is applicable.  The
> issue was not being litigated in the Underlying Action.
> Thus, the judgment in the Underlying Action cannot serve
> as a basis to argue that collateral estoppel bars Empire from
> litigating the issue of the applicability of the business use
> exclusion here.

*Id.* at 15.

The Court concurs with Defendant.  In asserting a claim of *respondeat superior*

Mr. Forkwar needed to demonstrate in the prior adjudication that Mr. Mahdi was an

employee or agent of J&J Logistics, that at the time of the accident Mr. Mahdi was

performing duties as the employee of J&J Logistics, that J&J Logistics is responsible for

the acts of its employee Mr. Mahdi, and that J&J Logistics controlled and directed the work Mr. Mahdi performed. *Oaks v. Connors*, 339 Md. 24, 30-31, 660 A.2d 423, 426 (1995). No such evidence was presented during the prior adjudication. To the contrary the evidence presented during the prior adjudication was that Mr. Mahdi was an independent contractor for J&J Logistics. *See* Def.'s Mem., Ex. B (Independent Contractor Agreement of 9/12/03 between J&J Logistics Inc. and Mr. Mahdi). The doctrine of r*espondeat superior* is not applicable to an independent contractor.

Moreover the issue of whether a principal-agent relationship existed between J&J Logistics and Mr. Mahdi is *different from* whether the "Business Use exclusion" provision of Empire's policy would preclude coverage of Mr. Mahdi's use of the vehicle at the time his vehicle struck Mr. Forkwar's. The Court of Special Appeals of Maryland has found the "Business Use exclusion" provision of Empire's policy is not ambiguous. *Empire Fire & Marine Ins. Co. v. Liberty Mut. Ins. Co.*, 117 Md. App. 72, 100 n.14, 699 A.2d 482, 495 n.14 (1997). In Maryland "when an insurance policy which apparently has had a nationwide use and has been judicially constructed in many states, the parties to the insurance agreement adopt the policy with the uniform judicial construction accorded." *Id.* at 96, 699 A.2d at 493 (citing *Stanley v. American Motorists Ins. Co.*, 195 Md. 180, 73 A.2d 1 (1950)). Other courts have construed the "Business Use exclusion" provision of the insurance for non-trucking use, specifically the phrase "used in the business of anyone to whom the 'auto' is leased or rented[,]" Def.'s Mem., Ex. A at 28, as "clearly refer[ring] to occasions when the truck is being used to further the commercial interests of the lessee." *Empire Fire & Marine Ins. Co. v. Brantley Trucking, Inc.*, 220 F.3d 679, 682 (5th Cir. 2000). That meaning of the "Business Use exclusion" provision of the non-

trucking policy will be applied by this Court. In conclusion the Court finds Mr. Forkwar fails to establish the first element of collateral estoppel under Maryland law.

For the second element of collateral estoppel Mr. Forkwar must demonstrate there was a final judgment on the merits. Mr. Forkwar argues that, by the state court entering judgment in favor of J&J Logistics, this action is tantamount to a final judgment on the merits. Pl.'s Mem. at 12. Specifically Mr. Forkwar contends the state court decided, with its judgment in favor of J&J Logistics, that Mr. Mahdi was operating his truck for a non-business purpose and therefore Empire, as the insurer of Mr. Mahdi when operating his vehicle for a non-business purpose, must satisfy the judgment entered in favor of Mr. Forkwar and against Mr. Mahdi.

Empire argues the final judgment from the state court was limited to the issue of *respondeat superior*, not whether at the time of the accident, Mr. Mahdi, an independent contractor, was operating his tractor in the business of J&J Logistics or not. This Court concurs.

When Mr. Wampler, counsel for J&J Logistics, moved for judgment in the prior proceeding, Mr. Wampler asserted, "There's no evidence at all that my client was the principal and that Mr. Mahdi was his agent at the time of this accident." Def.'s Mem., Ex. C (Tr. 1-69:13 – 15). The state court made the following findings.

> [T]he Court finds that [Mr. Forkwar] has failed to establish a prima facie case of agency against J & J Logistics and that [Mr. Forkwar] failed to show that Mr. Mahdi was operating the vehicle on behalf of J & J Logistics or in the furtherance of J & J Logistics' business. So therefore judgment is granted in favor of J & J Logistics, Inc., as to Count 2 [Respondeat Superior].

*Id.*, Ex. C (Tr. 1-69:24 – 1-70:5).

The state court's finding that Mr. Mahdi was not operating the vehicle on behalf of J&J Logistics is based on the only evidence presented, the testimony of J&J Logistics' principal, Marcus Johnson. During argument on J&J's motion for judgment, Mr. Forkwar's counsel acknowledged receiving, that morning of the trial, a copy of the independent contractor agreement between Mr. Mahdi and J&J Logistics. *See id.*, Ex. C (Tr. 1-68:11 – 13). The state court entered a final judgment on the merits in favor of J&J Logistics but that judgment pertains to Count II, a *respondeat superior* claim, not to whether the "Business Use exclusion" provision of Empire's policy is applicable. The Court thus finds Mr. Forkwar fails to establish the second element of collateral estoppel.

"Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?" *Colandrea*, 361 Md. at 391, 761 A.2d at 909, is the third element of collateral estoppel Mr. Forkwar must establish. Mr. Forkwar asserts, if Empire had defended its insured (Mr. Mahdi), Empire would, as a party to the action, had the right to examine witnesses, present evidence and file an appeal if an unfavorable decision was rendered. In the alternative Mr. Forkwar claims that Empire was in privity with Mr. Mahdi, a party to the action, because as the insurer Empire had an obligation to defend Mr. Mahdi.

Empire denies that it is either a party to the prior state court proceeding or in privity with a party to the prior state court proceeding. "It is beyond dispute that Empire was not a party to the Underlying Action and that it neither participated in nor controlled the Underlying [A]ction." Def.'s Mem. at 11. With regard to privity with a party to the prior adjudication, Empire contends Mr. Forkwar improperly relies on *Lake v. Jones*, 89 Md. App. 579, 598 A.2d 858 (1991). "In <u>Lake</u> the insurer filed a subrogation action and

was therefore 'standing in the shoes' of its insured.  Thus, the Court found that there was privity between the insurer and insured.  Here, Empire's interest in proving the applicability of the Business Use exclusion is divergent from Mahdi's interest that coverage be found to be applicable."  Def.'s Mem. at 12.  The Court concurs.  Empire was neither a party in the prior adjudication nor in privity with a party to the prior adjudication.  Mr. Forkwar fails to establish the third element.

The final element Mr. Forkwar must prove for collateral estoppel to preclude Empire from re-litigating the issue decided by the state court is, "[w]as the party against whom the plea is asserted given a fair opportunity to be heard on the issue?"  *Colandrea*, 361 Md. at 391, 761 A.2d at 909.  Mr. Forkwar notes that Empire resisted repeated requests, by three distinct parties in the prior adjudication, of honoring its contractual obligation to defend Mr. Mahdi.  Pl.'s Mem. at 13.  An insurer, such as Empire, has a duty to defend when there exists the potentiality that the policy will cover the claim.

> Under the potentiality rule, the insurer will be obligated to defend more cases than it will be required to indemnify because the mere possibility that the insurer will have to indemnify triggers the duty to defend."  Litz v. State Farm Fire & Cas. Co., 346 Md. 217, 22[5] (1997) (Citation[] omitted).  That there existed a potentiality that a finder of fact could find that Mahdi was operating his vehicle for a non-business purpose cannot be credibly questioned. Defendant, Empire's failure to defend Mahdi is inexplicable.

Pl.'s Mem. at 14.

Mr. Forkwar further asserts that if this Court finds Empire's "Business Use exclusion" provision is applicable, Mr. Mahdi is render uninsured contrary to Maryland law.  Relying upon *Salamon v. Progressive Classic Insurance Co.*, 379 Md. 301 (2004),

Empire owes Mr. Mahdi at least the statutory minimum level of coverage. Thus Empire had a duty to defend Mr. Mahdi. *See* Pl.'s Mem. at 14-15.

Empire acknowledges receiving multiple requests from Mr. Forkwar to appoint counsel for Mr. Mahdi and appear at the state court trial. These requests by Mr. Forkwar are not however substitutes for "Empire having the opportunity to litigate its coverage defenses in the Underlying Action." Def.'s Mem. at 11. Empire contends, since it was not a party at the prior proceeding, it did not have a full and fair opportunity to litigate the issue of whether Mr. Mahdi was operating his tractor in the business of J&J Logistics when the accident occurred. Moreover Empire asserts J&J Logistics' motion for judgment was not only unopposed but encouraged by Mr. Forkwar. In short the issue of the application of the "Business Use exclusion" provision of Empire's policy was neither actually litigated nor fully adjudicated in the prior proceeding. *Id.* at 12.

Additionally Empire argues Mr. Forkwar's reliance on *Salamon* is misplaced. The *Salamon* case concerns a personal automobile insurance policy covering the use of a personal automobile. In this case Empire's commercial policy provided coverage to Mr. Mahdi when Mr. Mahdi was not using the tractor in the business of another entity. When Mr. Mahdi was using his tractor in the business of another entity such as J&J Logistics, under federal law J&J Logistics was responsible for any accident that occurred.

> [U]nlike in <u>Salamon</u>, where enforcement of the so called "pizza exclusion" would have rendered the negligent driver uninsured, here, J&J Logistics was required by law to maintain insurance to provide coverage in this exact scenario. The fact that [Mr. Forkwar] failed to explore this issue in the Underlying Action, and failed to challenge J&J Logistics about the fact that Mahdi was driving under J&J Logistics' I.C.C. numbers at the time of the accident, and was driving the tractor while it was leased to J&J Logistics,

> does not require Empire to provide coverage where it was
> specifically excluded.

Def.'s Mem. at 17.

In his reply Mr. Forkwar argues that he conducted his trial consistent with the information he received during the discovery process. "Nothing was produced that was inconsistent with Defendant, J & J Logistics, Inc.'s position as it developed at trial." Pl.'s Reply at 2. In its Reply Empire notes, "[i]n both his sworn response to the questionnaire and in his recorded statement, Mahdi stated that at the time of the accident, his tractor was leased to J&J." Def.'s Reply at 2. Empire further asserts, "Empire's investigation revealed that, as construed by multiple courts across both state and federal jurisdictions, Mahdi was operating his tractor in the business of J&J, an entity to whom it was leased, at the time of the accident. Therefore, the 'Business Use' exclusion in the Empire policy applied, and Empire had no duty to defend or indemnify Mahdi." *Id.*

The Court finds, based on Empire's internal investigation that Mr. Mahdi was operating the tractor in the business of J&J Logistics at the time of the accident, Empire declined to defend Mr. Mahdi. Because Empire declined to defend Mr. Mahdi and thus did not enter its appearance at the prior proceeding, Empire was not given an opportunity to be heard on the issues of the applicability of the "Business Use exclusion" provision. Mr. Forkwar has failed to establish the fourth and final element for collateral estoppel to bar Empire from litigating the issue of coverage. The Court therefore finds Empire is not collaterally estopped by the state court's judgment in favor of J&J Logistics.

B.      *Whether the "Business Use" exclusion provision applies to Mr. Forkwar's claim*

Empire argues that, at the time of the accident, Mr. Mahdi was operating the tractor in the business of J&J Logistics, and therefore pursuant to the "Business Use

exclusion" provision of the non-trucking policy, Empire is not responsible for providing coverage. Empire is thus entitled to summary judgment.

In his Reply Mr. Forkwar contends, because Mr. Mahdi was traveling toward a food establishment to purchase a meal when the accident occurred, Mr. Mahdi was engaged in the non-business use of his tractor. Moreover, because Mr. Mahdi had not been told what load he would be hauling and because he had not punched in at the Giant warehouse, Mr. Mahdi was engaged in the non-business use of his tractor when the accident occurred. "Mahdi had not been engaged in the business of J & J Logistics, Inc. since he punched the clock and left his last assignment at Giant. He did not intend to again engage in its business until after he ate his lunch, and would not only begin doing so after he again punched the clock in at Giant." Pl.'s Reply at 5. In short, Mr. Forkwar asserts Mr. Mahdi was engaged in the non-business use of his tractor and therefore the "Business Use exclusion" provision of Empire's policy is not applicable.

In its Reply Empire contends, although Mr. Mahdi did not have the trailer attached to his tractor at the time of the accident, he was nonetheless furthering the interest of J&J Logistics by traveling toward the Giant warehouse to pick up a load for delivery, even though Mr. Mahdi had not yet reached his destination when the accident occurred. The fact that Mr. Mahdi planned to stop and purchase lunch before arriving at the Giant warehouse and additionally the fact that Mr. Mahdi had not yet punched in at the Giant warehouse are irrelevant. The fact remains, when Mr. Mahdi began operating his tractor on November 26, 2004, he was furthering the business interest of J&J Logistics with the scheduled pick up of a load at the Giant warehouse. Therefore the "Business Use exclusion" provision applies.

The Court has reviewed several cases on this issue and finds the case law supports Empire's assertions. In the case of *Mahaffey v. General Security Insurance Co.*, 543 F.3d 738 (5th Cir. 2008), Wynn, on behalf of First Coast Intermodal Service ("First Coast") had hauled a load from Kentucky to Louisiana. After delivering the load Wynn called the First Coast dispatcher and was advised to take the rest of the night off and call First Coast in the morning to learn if another load needed to be delivered. Wynn decided to drive to a motel for the night. On his way to the motel Wynn's tractor was involved in an accident with a vehicle operated by Mahaffey. Wynn had a policy with Redland Insurance Company ("Redland") at the time of the accident. The Redland policy provided coverage for Wynn's tractor under certain circumstances. The coverage had a series of endorsements and exclusions including a non-trucking use endorsement. That endorsement excluded coverage when the covered vehicle was used to carry property in any business or used in the business of anyone to whom the vehicle is rented.

The Court of Appeals for the Fifth Circuit determined that Wynn was operating his tractor in the business of First Coast at the time of the accident. "Wynn was furthering First Coast's commercial interests to have a driver on standby and available to take a load the next day, regardless of whether one actually became available." *Mahaffey*, 543 F.3d at 743. The Fifth Circuit further observed, "driving to a motel far from home in order to sleep to be adequately rested, when asked to remain in the area to see if a load becomes available, is a work-related function for a commercial driver because commercial drivers are required to have a certain number of rest hours between hauls." *Id.*

The facts of *Auto-Owners Insurance Co. v. Redland Insurance Co.*, 549 F.3d 1043 (6th Cir. 2008) are similar to *Mahaffey*. On behalf of Everhart Trucking, Gale drove a load from Ohio to Michigan. Upon completing his delivery late that night, Gale left a voice mail message informing Everhart Trucking that he finished his delivery and would now find a place to sleep for the night. Gale indicated he would do more work for Everhart Trucking the following day but requested that the assignment not be too early in the morning. While driving toward his destination that night, Gale fell asleep behind the wheel of his tractor, colliding with another vehicle, killing the driver. At the time of the accident Gale had a policy with Redland. When Gale and his employer were sued, Redland denied coverage and refused to defend Gale and his employer. The other carrier tendered a defense, settled the suit, obtained an assignment of claims from Gale and his employer and then filed a lawsuit against Redland alleging breach of its duty to defend.

Considering the "in the business" exclusion of Redland's policy issued to Gale, the Court of Appeals for the Sixth Circuit noted that Gale "was not engaged in some frolic and detour, heading somewhere for his own purpose and no other" at the time of the accident. *Auto-Owners*, 549 F.3d at 1045. The Sixth Circuit pointed out that other courts have found a driver is operating "in the business" of a carrier when the driver is traveling in the vehicle to find a place to sleep. Second, the Sixth Circuit commented about Gale's anticipation of receiving instructions from the carrier about another load the following morning. "Reasonably anticipating an order for the next day, positioning oneself for an order for the next day or getting some necessary sleep after a long day all serve the commercial interests of a motor carrier." *Id.* at 1046. The Sixth Circuit affirmed the lower court's judgment.

In the case of *Empire Fire and Marine Insurance Co. v. Brantley Trucking, Inc.*, 220 F.3d 679 (5th Cir. 2000), Harris, a driver, had arrived the night before at the Blue Flash Express ("Blue Flash") terminal yard waiting for cargo to transport the following morning. While waiting for that cargo, Harris decided to have his truck serviced. After leaving the service center to return to the Blue Flash yard, Harris' truck collided with another vehicle.

There were two insurance policies in effect at the time of the accident. Blue Flash had an insurance policy with Reliance National Indemnity Company ("Reliance") covering Blue Flash as a transporter for trucking operations. Harris, individually, had a policy with Empire Fire and Marine Insurance Company ("Empire") that provided coverage for non-trucking operations of Harris' truck. Empire's policy contained a "Business Use exclusion" provision. The Fifth Circuit found the "Business Use exclusion" provision of Empire's non-trucking policy is plain. The Fifth Circuit determined

> The portion of the exclusion which we are concerned with in this case "while the covered 'auto' is used in the business of anyone to whom the 'auto' is leased or rented[]" - - clearly refers to occasions when the truck is being used to further the commercial interests of the lessee. This was precisely the case here, where Harris was only biding his time while the cargo loaded, had the truck maintenanced, and was en route back to Blue Flash's yard to pick up the load when the accident occurred.

*Id.* at 682 (citations omitted).

The Fifth Circuit found the undisputed facts demonstrated Harris' actions were in furtherance of the business of Blue Flash. The Fifth Circuit noted however "[a]lthough Harris' actions were placed within Blue Flash's commercial interests, had he been out

pursuing leisurely engagement, he would not be 'in the business of' Blue Flash." *Id.* (citation omitted).

Returning to the facts of this case Mr. Mahdi was neither "pursuing leisurely engagement" nor "engaged in some frolic and detour, heading somewhere for his own purpose and no other" when his truck collided with Mr. Forkwar's vehicle. Mr. Mahdi had received instructions from J&J Logistics to pick up a load at the Giant warehouse. Although Mr. Mahdi had decided to stop for a meal before reporting to the Giant warehouse, the only reason why Mr. Mahdi was operating his vehicle at the time of the accident was in furtherance of J&J Logistics' business.

The "Business Use exclusion" provision of Mr. Mahdi's non-trucking policy is *identical* to the "Business Use exclusion" provision of Mr. Harris' non-trucking policy in the *Brantley Trucking* case. Empire is the insurer of Mr. Mahdi and was the insurer of Mr. Harris in the *Brantley Trucking* case. As noted previously this Court finds the language of the "Business Use exclusion" provision is plain and unambiguous. Moreover the Court finds the "Business Use exclusion" provision of Mr. Mahdi's policy applies and Empire is not required to indemnify Mr. Forkwar.

## CONCLUSION

For the foregoing reasons the Court finds there are no genuine issues as to any material fact and Empire is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An Order will be entered separately.


  September 20, 2010                        /s/
        Date                        WILLIAM CONNELLY
                                    UNITED STATES MAGISTRATE JUDGE